Baldwin, J.
The first question which I shall consider in this case, is, whether the Circuit court erred in overruling the appellant’s demurrer to the bill of the complainants.
The bill was filed by the appellees, in behalf of themselves, and numerous other creditors secured by the deed of trust executed by the appellant, to obtain relief in consequence of the refusal to act of the trus *179 tees named in the deed. It cannot he doubted that there is sufficient matter of equity stated in the bill, and if the demurrer ought to have been sustained, it must be for want of proper parties.
It is a rule of equity that a trust shall never fail for want of a trustee, and therefore if the trustee dies, or refuses to accept the trust, or is incapable of performing it, a Court of equity will give to the cestuis que trust the proper relief, either by executing the trust or appointing a trustee for that purpose. The substantial object of such a suit is to obtain the performance of the trust, and the mode of accomplishing it is a proper matter for the sound discretion of the Court. In a case like the present, where the conveyance is an incumbrance for the security of creditors, with power to the trustee to sell the property conveyed and apply the proceeds to the discharge of the debts, and the cestuis que trust sue in equity for relief, the usual course of the Court is to treat the security as it would a mortgage, and cause a sale to be made of the trust property by a commissioner appointed for the purpose, and acting under its direction and control; and to dispose of the proceeds by its decree according to the rights of the parties. And it would be difficult to conceive a case of the kind where the cestui que trust comes before the Court with proper parties to his bill, in which it would be error to proceed in that mode, instead of merely appointing a trustee, and dismissing the subject to his individual judgment and discretion.
It is true that in this case the specific relief prayed for in the bill, is the appointment of trustees in place of those named in the trust deed, but who have refused to accept the trust. But the bill concludes with a general prayer for such other and further relief in the premises as to the Court may seem meet and proper, and equity and good conscience require. Now, the general rule is, that though the plaintiff may not be entitled to the *180 particular relief prayed for, yet the Court may give him the proper relief, under such a general prayer, which the case stated in his bill will justify. There are some exceptions to this rule; put none applicable to the present case. In truth, a sale under the direction of the Court, and the proper application of its proceeds, would he nothing more than a condition or qualification of the specific relief indicated in the bill; for the person appointed to perform those duties is substantially a trustee, and there can be no possible objection to his being guided by the instructions of the Court, which is for the benefit of all parties, and cannot injure or surprise any one.
Whether the Court decided correctly at the hearing, in merely appointing trustees and clothing them with all the powers and duties conferred by the trust deed upon the trustees therein named, or ought to have directed the proper steps in order to the execution of the trust under the instructions and control of the Court, is therefore a question that does not arise upon the demurrer, which was properly overruled, unless it appears from the bill that the plaintiffs have failed to make the proper parties thereto.
In regard to the necessary parties to a suit in equity, it is impracticable to lay down any rule free from qualifications and exceptions. The best general rule, perhaps, to be deduced from the numerous authorities is, that all persons having material interests in the subject, which are to be affected by the object of the suit, must be made parties to the bill, either as plaintiffs or defendants. But there are various classes of cases to which the application of the rule would be attended with such delay, inconvenience and expense, as would be found intolerable in the administration of justice. Amongst these are suits brought by creditors against the representative of a deceased debtor, for an account of the assets of his estate, and the application thereof to the *181 payment of his debts. In such cases, all the creditors have common, and at the same time distinct interests in the subject and object of the suit; and a strict adherence to the general rule would require them all to be made formal parties to the bill. To avoid the necessity of this, and yet prevent the unjust and injurious consequences which might otherwise ensue, a practice has grown up, and is well established, of making those who are not plaintiffs, substantial, instead of formal parties, by allowing a few, or one only, of the creditors, to sue in behalf of themselves and all the rest, and those so represented to come in before a master, establish their demands, and participate in the relief. This practice has been extended to cases where a number of creditors are secured by a deed of trust. Story’s Eq. Plead. 3d edit. § 102, and the authorities there cited. It has been sometimes asserted, that the practice is to be limited to cases where all the creditors have a common interest in the objects of the bill, and is not allowable to a mortgagee claiming priority of satisfaction; but the more recent authorities, upon better reason, establish the contrary doctrine ; for the bill being filed on behalf of all, they are so far parties to the suit that they have a right to appear, assert their several priorities, and contest those of others. Story’s Eq. Plead. § 101, 102, 103, 76 c., and the authorities there cited.
I think, therefore, that although the bill would have been demurrable if the plaintiffs had sued for themselves alone, not having made the other creditors parties to the bill, yet that inasmuch as they sued for the benefit of all, and it was competent for the Court to make the rest substantial parties, by the proper proceedings in such cases before a master, that the demurrer was properly overruled.
It is urged, however, on the part of the appellant, that the Court, on overruling his demurrer, ought to have directed him to answer the bill. This would have *182 been an idle ceremony, unless it was incumbent on the Court to allow time for putting in an answer. And this, it is contended, ought to have been done, under the provision of the act, 1 Rev. Code, ch. 66, § 100, p. 216, that upon a plea or demurrer argued and overruled, the defendant shall answer within two calendar months. But a material change was made in our chancery practice by the act of 1826, “ to alter and reform the mode of proceeding in the Courts of chancery;” Supp. Rev. Code, p. 130; the first section of which provides, that every writ of subpoena instituting a suit in any Superior court of chancery in this Commonwealth, shall, after the direction to summon the defendant to appear at the time and place therein mentioned, to answer the bill of complaint, contain a provision or notification to this effect: “ and unless he shall answer the said bill within four months, (by a subsequent statute two months,) the Court will take the same for confessed, and decree accordingly ; and it shall be the duty of the officers serving such a subpoena, to leave with the defendant a copy thereof; and upon the return thereof executed, if the bill be filed at or before the return day, unless the defendant shall, within four months, (now two months,) appear and plead, answer or demur, the plaintiff may either have the cause set for hearing, without having any decree nisi served, or may proceed to compel the defendant to answer; and in either case the same proceedings shall be thereafter had as are now authorized by law: Provided however, That the defendant may, at any time before a final decree, be allowed to file his answer, or plead, or demur: but the cause shall not be sent to the rules, or continued therefor, unless good cause be shewn.”
The effect of this act of 1826, was to dispense with the decree nisi, which was nothing more than the taking of the bill for confessed in Court or at the rules, with a declaration that the Court would proceed at a fu *183 ture day to decree the matter thereof, unless the defendant, at or before the next term after he shall have been served with a copy, shall shew cause to the contrary, Rob. Forms, p. 186. The act substituted for the decree nisi, the notice in the subpoena, and for the service of the decree nisi, that of this subpoena nisi. The manifest intent of the statute is to enable the plaintiff, when his bill has been filed in due time, and the subpoena duly executed, if the defendant is in default, to bring on the cause for hearing at the first term thereafter, and obtain such decree as he is entitled to; but at the same time to authorize the defendant to answer, plead or demur, at any time before a final decree; with a prohibition, however, of any delay of the case beyond the term, unless for good cause shewn to the Court.
In this case the defendant being in default, the law attached to his pleading, demurring, or answering, the condition that his doing so should not delay the cause ; and this condition was expressed in the order of the Court receiving his demurrer. If the defendant had answered instead of demurring, the plaintiff would have been entitled to a trial without delay, and equally so though a demurrer was filed instead of an answer. The overruling of the demurrer placed him in no better condition than he was before : he had still a right to answer, but subject to the same condition. If the mere filing of a demurrer is to entitle a defendant, in default, to the allowance of two months to answer, it will enable him in every case, without any reason whatever, to obtain a continuance beyond the term; which is directly in the teeth of the plain words of the statute, and against its true spirit and meaning.
The case of Sutton v. Gatewood and wife, 6 Munf. 398, cited for the appellant, was decided under the old law, which the act of 1826 was designed to reform. There the decree nisi was set aside ; and leave granted to demur, without any condition imposed, either by law *184 or the order of the Court. Here, under the act of 1826, the defendant had a right to demur or answer without leave of the Court, but with the express condition that is should not avail for a continuance of the case, without leave of the Court for good cause shewn. Here he shewed no cause, asked no leave, and offered no answer. Surely it could not be error in the Court to proceed to any proper decree upon the merits.
The case of Bassett's adm'r v. Cunningham’s adm'r, 7 Leigh 402, also cited for the appellant, occurred since the act of 1826; but the question we are considering did not arise at all; the only question of practice being, whether in Virginia a defendant in chancery may, at the same time, answer and demur to the same matter in the bill. Some of the Judges, in discussing that question, refer incidentally to the provision in 1 Rev. Code, ch. 66, § 100, p. 211, already noticed, that upon a demurrer overruled, the defendant shall answer within two months after. And such is the law now, where the defendant is not in default when he files his demurrer; but the question here is, whether a defendant in default is by filing a demurrer to the bill entitled to a continuance, and to that question the minds of the Judges were, in the case cited, in no wise directed.
It only remains for me to consider whether the decree rendered by the Circuit court is in itself erroneous.
I have already intimated that if the plaintiffs had sued for themselves alone, it would have been a matter for the sound discretion of the Court, whether it would merely appoint trustees to carry out the provisions of the deed according to their own views and judgment, or would take the proper steps to have the trust executed under the direction and control of the Court. But upon that question, in that frame of the case, the other creditors secured by the deed would have had a right to be heard, for they were materially interested both in the subject and the object of the suit. And *185 therefore, if the plaintiffs had sued for themselves alone, it would have been indispensably requisite to make all the other creditors secured by the deed defendants to their bill; and if they had failed to do so, the bill would have been demurrable for want of proper parties. The plaintiffs however did not sue for themselves alone; they have sued for themselves and all the other creditors secured by the trust deed; and now the question is, what were the proper proceedings to be had, and the proper relief to be given upon such a bill.
It cannot be doubted that if the plaintiffs had, upon the case stated in their bill, specifically prayed for the proper proceedings before a master, and a sale of the trust property, and a disposition of the proceeds according to the rights of those concerned, it would have been competent for the Court to have directed such proceedings, and to have granted such relief. And I have shewn that the omission of such a specific prayer was immaterial, because, in the first place, such a course and mode of relief would have been proper under the general prayer of the bill, and in the next place, would have been in truth nothing more than a conditional or qualified grant of the specific relief actually prayed in the bill.
On the other hand, I think it clear that the plaintiffs having sued in behalf of the other creditors named in the deed, as well as themselves, it was neither necessary nor proper to make them defendants to the bill, the appropriate mode of bringing them before the Court being by the usual proceedings before a master, and the relief consequent thereupon being the adjustment of the rights and priorities of the several creditors, and the sale of the trust property and the application of its proceeds under the direction and control of the Court. Nor was it competent for the Court in a case so sued to adopt any other mode of proceeding or relief. It would *186 be absurd to suppose that the Court ought to have require d the other creditors to be made parties to the bill, for the purpose of determining the proper mode of proceeding and relief. for that would have been to encounter the very inconvenience which the practice in such suits, by some of the creditors in behalf of themselves and the rest, was designed to obviate.
I think, therefore, that in this suit, brought by the plaintiffs in behalf of themselves and the other creditors secured by the trust deed, the Court ought to have adopted the usual proceedings before a master, with a view to the execution of the trust under its own direction and control; and that it was not competent for the Court merely to appoint trustees to carry out the provisions of the trust. There is no reason for saying that such proceedings and relief would have been improper, and in the actual state of the case it had no discretion on the subject. But suppose it had, then I think its discretion was improperly exercised.
The case made by the bill, (which was taken for confessed,) and the exhibit therewith, was that of a conveyance by a debtor to trustees of property, real and personal, to secure debts to a large amount, to numerous creditors, all of whom, with two exceptions, had recovered judgments. By the provisions of the deed, time was allowed the grantor, who covenanted to pay the moneys secured, in instalments of one, two, three and four years. The creditors, including those by judgments, were divided into three classes, and priority of satisfaction was to be made according to those classes. The deed was executed by no one besides the grantor and his wife, and she was not privily examined. The bill alleges that the trustees named refused to undertake the trust, but does not aver that it was accepted by the creditors intended to be secured ; and the only parties to the bill are the plaintiffs, the grantor and his wife, the trustees named in the deed, and two persons, *187 who, as sureties to some of the creditors, signed a memorandum annexed to the deed, waiving any objection to the indulgence allowed to the grantor. It does not appear that the priorities conferred by the deed amongst the judgment creditors, were according to their legal priorities, nor what payments, if any, have been made by the grantor towards the discharge of the debts. The property conveyed by the deed is a tract of land in Kanawha county, with the salt wells, salt furnace, fixtures, &c., tools, implements, &c., thereon, and certain slaves, with other personal property. And the trustees were authorized, from time to time, for default of payment, to sell so much of the property as should be requisite, and make application of the proceeds ; the sales to be for cash, after public notice of ninety days.
Now, for aught that appears, some of the creditors may be unwilling to accept the provisions of the deed, and choose to stand upon their judgments, or other legal priorities ; nor can it be ascertained without adjustment of the demands of the numerous creditors, what payments may have been made on account of their debts, nor of course what will be the aggregate amount chargeable upon the trust fund. Nor, in the present state of the cause, can it be known that the terms of notice and sale prescribed by the deed, may not require alteration, in order to prevent a sacrifice of the property. And though parties concurring in such a deed may have been willing to confide the performance of the trust to the trustees originally selected for the purpose, yet when the aid of a Court of equity is invoked in such cases, it ought to be extended in such wise as will best promote the purposes of justice, settle the rights of the parties, and prevent future litigation. It is true the substituted trustees are directed by the decree, in the event of a sale of the trust property, to report their proceedings to the Court, which seems to *188 indicate that the Court intended to reserve some control over their conduct; but in the mean time great and irreparable mischiefs might occur in the execution of the trust, for want of the previous instructions and Court.
I think that the decree ought to be reversed, and the cause remanded to the Circuit court, with directions to proceed therein according to the principles above indicated ; and to allow the appellant, at any time before a final decree, to answer the bill of the plaintiffs, if he shall offer to do so, but without delaying the case, unless for good cause shewn.
The other Judges concurred in Judge Baldwin’s opinion.
The decree was as follows:
The Court is of opinion, that the Circuit court did not err in overruling the demurrer of the appellant to the bill of the complainants, nor in proceeding to hear the cause, without further delay, upon the bill taken for confessed and the exhibits therewith: but that it did err in the relief granted by its decree; instead of directing the usual proceedings before a commissioner, after notice duly published, with the view of ascertaining and adjusting the rights and priorities of the creditors named in the trust deed, and the balances due to them respectively, in order to the execution of the trust under the direction and control of the Court, by the sale of the trust subject, on a reasonable credit, and the application of its proceeds, according to the rights and interests of those concerned. It is therefore decreed and ordered, that the decree of the Circuit court be reversed and annulled, with costs to the appellant: and the cause is remanded to the Circuit court for further proceedings as above indicated, with permission to the appellant to answer the bill, if he shall offer to do so *189 at any time before a final decree, but upon condition of not delaying the cause; and for such measures, if applied for by any of the creditors, as may be deemed proper for the preservation of the trust subject, and of its rents, profits and hires, until the ultimate disposal thereof.